IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Sherry Robinson, | ) | Case No.: 1:19-02216-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Andrew M. Saul, Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the Court with the Report and Recommendation of United States Magistrate Judge Shiva V. Hodges ("Report and Recommendation") pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Sherry Robinson ("Plaintiff" or "Robinson"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] The Magistrate Judge issued her Report and Recommendation on July 10, 2020, finding that "Robinson has not shown that the Commissioner's decision was unsupported by substantial evidence or

---

[1] This matter was originally before the Court because the Plaintiff initiated an appeal to the United States District Court for the District of South Carolina on November 15, 2016. The Court issued an Order remanding the case back to the Defendant. (DE 18, p. 2.). The Appeals Council ultimately complied with the District Court's Order when it remanded the case to the ALJ in an Order dated May 21, 2018. (DE 18, p. 2.). A second administrative hearing was conducted on December 14, 2018, before the same ALJ in Mauldin, South Carolina. Thereafter, the ALJ issued a second unfavorable decision in this matter on January 29, 2019. (DE 18, p. 2.). Plaintiff timely filed written exceptions to the ALJ's second decision with the Appeals Council. (DE 18, p. 3). The Appeals Council, on July 5, 2019, issued the final administrative determination of the agency again affirming the denial of benefits. (DE 18, p. 3.). Having again exhausted her administrative remedies, Plaintiff commenced this action in the United States District Court for the District of South Carolina, seeking judicial review of the final administrative decision of the Social Security Administration.

1

reached through application of an incorrect legal standard[,]" and therefore, recommending that the Commissioner's decision be affirmed.  (DE 18.)

On July 24, 2020, Robinson filed objections to the Report and Recommendation.  (DE 19.) Robinson's objections allege that the ALJ did not properly account for her moderate limitations in 1) concentration, persistence, and pace and (2) in interacting with co-workers and supervisors. (DE 19, p. 1-2.)  Thereafter, on August 7, 2020, the Commissioner filed a response to Robinson's objections.  (DE 20.)   Having carefully considered the parties' submissions and the applicable law, the Court adopts the Report and Recommendation and affirms the Commissioner.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which this Court incorporates herein without a full recitation.  (DE 18, pp. 3-51.)  However, as a brief background relating to the objections raised by Robinson, the Court provides this summary. Robinson was born on February 5, 1964.  She claims that she has been unable to work since February 5, 2014, which is her fiftieth birthday and her alleged onset date ("onset date").  Robinson completed high school and one year of college and has past relevant work experience as a teacher's aide and a school bus driver.  (DE 18, p. 3.)  Robinson's alleged disability is due to carpel tunnel syndrome, obstructive sleep apnea ("OSA") and narcolepsy.  (DE 18, p. 3.)

Plaintiff presented to Joseph Friddle, P.A. ("PA Friddle"), for management of bipolar disorder on April 24, 2013. (DE 18, p. 6.)  She complained of difficulty concentrating, feelings of sadness and hopelessness, frequent crying spells, difficulty initiating and maintaining sleep, daytime hypersomnolence, anxiety, constant worry, panic and panic attacks, and reduced energy, motivation, and interest.  (DE 18, p. 6.)  She described rapidly cycling moods, racing thoughts, brief periods of high energy, and being impulsive and hyperverbal.  (DE 18, p. 6.)

PA Friddle observed the following on mental status exam: down affect; concerned and frustrated mood; clear sensorium; orientation to person, place, and time; intact short- and long-term memory; scattered concentration and focus; average judgment, insight, and fund of knowledge; ambulated well; appropriate dress and hygiene; normal speech; obsessive thought processes; no gross cognitive deficits; goal-oriented toward treatment; and no mania, psychosis, or suicidal or homicidal ideation.  (DE 18, p. 6.)  He assessed bipolar disorder, mixed, not otherwise specified ("NOS"), and a global assessment of functioning ("GAF")[2] score of 60.[3]  Id. Jeffrey K. Smith, M.D. ("Dr. Smith"), reviewed the treatment notes, discussed the case with PA Friddle, and agreed with his findings and plan.  (DE 18, p. 7.)

On July 21, 2013, state agency consultant Xanthia Harkness, Ph.D. ("Dr. Harkness"), considered Listings 12.02 for organic mental disorders, 12.04 for affective disorders, and 12.06 for anxiety-related disorders.  (DE 18, p. 12.)  Dr. Harkness found that Robinson had mild restriction of basic activities of daily life ("ADLs"), mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace.  (DE 18, p. 12.)  She concluded that Plaintiff's mental impairments did not impose more than mild functional limitations to her work-related activity.  (DE 18, p. 12.)  Craig Horn, Ph.D. ("Dr. Horn"), reviewed

---

[2]     The GAF scale is used to track clinical progress of individuals with respect to psychological, social, and occupational functioning. American Psychiatric Association: Diagnostic & Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR").  The GAF scale provides 10-point ranges of assessment based on symptom severity and level of functioning. Id.  If an individual's symptom severity and level of functioning are discordant, the GAF score reflects the worse of the two. Id.

[3]     A GAF score of 51–60 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, [and] has some meaningful interpersonal relationships." DSM-IV-TR.

the record on August 29, 2013, and found that Dr. Harkness's rating remained valid. (DE 18, p. 12.)

PA Friddle completed a third opinion form on December 18, 2013. (DE 18, p. 19.) He indicated Robinson had poor or no ability to perform the following functions: deal with the public; use judgment; interact with supervisors; deal with work stresses; maintain attention/concentration; understand, remember, and carry out complex job instructions and detailed, but not complex, job instructions; behave in an emotionally-stable manner; relate predictably in social situations; and demonstrate reliability. (DE 18, p. 19-20.) He stated Robinson had fair abilities to follow work rules; relate to coworkers; function independently; understand, remember, and carry out simple job instructions; and maintain personal appearance. (DE 18, p. 19-20.) PA Friddle indicated Robinson could manage benefits in her own best interest. (DE 18, p. 19.) Moreover, PA Friddle wrote the following:

> As a result of her ongoing struggle w/ depression and mood instability[,] Mrs. Robinson is unable to perform the tasks checked in the previous pages. Her symptoms hinder her ability to concentrate, maintain reliability, and remain emotionally stable enough to cope w/ normal stress and communicate w/ the general public appropriately. Her condition is severe and we are doing our best to achieve progress.

(DE 18, p. 19.)

Dr. Smith completed another opinion form on November 27, 2018. (DE 18, p. 41.) He described Plaintiff as having poor or no ability to relate to coworkers, deal with the public, use judgment, interact with supervisors, and deal with work stresses. (DE 18, p. 41.) He indicated Plaintiff had fair ability to follow work rules, function independently, and maintain attention and concentration. (DE 18, p. 41.) He noted clinical findings that supported his opinion included evidence of mood swings, agitation, decreased concentration and focus, anxiety, and low frustration tolerance. (DE 18, p. 41.)

## **LEGAL STANDARD**

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. Mathews v. Weber, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection has been made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(l). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the report and recommendation only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted); see also Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003) ("A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object.")

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."[4] 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard. Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. Vitek v. Finch, 438 F.2d 1157 (4th Cir. 1971). "From this it does not follow, however, that the findings of the

---

[4] "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). "It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." Flack v. Cohen, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." Vitek, 438 F.2d at 1157-58. However, the court does not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

## DISCUSSION

Robinson objects to the Report and Recommendation's conclusion that substantial evidence supported the ALJ's decision not to include additional restrictions to Plaintiff's ability to stay on task. Robinson contends that the ALJ failed to build a logical bridge from the evidence to its conclusion, citing Brown v. Commissioner of Social Security Administration, 873 F.3d 251, 269 (4th Cir. 2017). However, the ALJ's decision in this case is distinguishable from the cases cited by Robinson because, not only did the ALJ specifically address Plaintiff's ability to remain on task in the RFC assessment, he also explained his reasons for declining to include additional restrictions. The Report and Recommendation correctly found the ALJ rated Plaintiff as having a moderate degree of functional limitation in concentrating, persisting, or maintaining pace. (DE 18, p. 57.) The ALJ included in the RFC assessment provisions for "simple 1–2 step tasks (reasoning level 3 or lower) on a sustained basis (8 hours per day, 5 days per week, in 2-hour increments with normal breaks for an 8-hour day). (DE 18, p. 57.) The ALJ explained:

> The claimant is limited to simple 1–2 step tasks (reasoning level 3 or lower) due to the findings of impaired concentration (Exhibit 9F; Exhibit 20F; Exhibit 27F). This

6

> limitation is also consistent with the claimant's reported activities, which show that she can perform a variety of simple tasks, including making sandwiches, cleaning, ironing, driving a vehicle, paying bills, counting change, handling a savings account, using a checkbook/money orders, reading and doing laundry (Exhibit 7E; Exhibit 12F; Hearing Testimony).  Further limitation is not warranted because the claimant's neuropsychological testing revealed minimal abnormalities and the claimant consistently has intact memory (Exhibit 9F; Exhibit 10F; Exhibit 20F; Exhibit 27F; Exhibit 32F).

(DE 18, p. 57.)

The court must uphold the Commissioner's decision as long as it was supported by substantial evidence and reached through the application of the correct legal standard.  Johnson v. Barnhart, 434 F.3d 650 (4th Cir. 2005).  This Court is not persuaded by Robinson's objection, and therefore, adopts the Report and Recommendation on this issue.

Next Robinson argues that the Report and Recommendation erred when it determined that the ALJ properly accounted for Robinson's moderate limitations in interacting with others.  The ALJ relied on substantial evidence in the record to support his decision that Plaintiff's moderate limitation in interacting with others was accommodated by eliminating Plaintiff's interaction with the public.  Robinson objects to this conclusion because the evidence used to address these limitations has nothing to do with Plaintiff's ability to interact with coworkers and supervisors.  To the contrary, the Report and Recommendation found that the ALJ addressed Dr. Smith's May 2015 and November 2018 opinions that Plaintiff had poor or no ability to relate to coworkers, deal with the public, and interact with supervisors. (DE 18, p. 65.) Although the ALJ presumably accepted Dr. Smith's opinion that Plaintiff would have poor or no ability to deal with the public as evidenced by his inclusion of a provision addressing it in the RFC assessment, he rejected the opinion as to Plaintiff's ability to interact with coworkers and supervisors *as inconsistent* with the objective evidence and her attendance at religious services that required social interaction.  (DE 18, p. 70.) (stating the opinion was inconsistent with "evidence generally showing normal speech

and no acute behavioral or psychological abnormalities (Exhibit 9F; Exhibit 20F; Exhibit 27F; Exhibit 30F; Exhibit 32F; Exhibit 35F)" and Plaintiff's "reported activities")  (emphasis added.) Since the Report and Recommendation addressed why a restriction is in place with respect to the general public, but not to supervisors and coworkers, the Report and Recommendation properly shows that the ALJ's decision is supported by substantial evidence in the record.

## CONCLUSION

For the foregoing reasons, the Court adopts the Report and Recommendation and affirms the Commissioner.

**AND IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

March 30, 2021
Greenville, South Carolina